Good morning, Your Honours. I'm Hardeep Rai, appearing for the petitioner Rabindranath Gabri. Your Honours, this is not a typical Sikh asylum case, where the asylum applicant says, I'm a farmer from the state of Punjab, I am a member of a political organisation like the Akali Dalman or the All India Sikh Student Federation, and claims a persecution because he supports a separate state of Khalistan or the government accuses him of supporting Sikh militants. And somehow the IJ doesn't seem to be able to get over that. He keeps saying, Mr. Gabri is not a typical Sikh or a traditional Sikh. He's clean shaven, he's not wearing a turban, and he says it over and over again. And it starts off on the master calendar hearing. Master calendar hearing in immigration proceedings is simply to do the pleadings. Respondent in those hearings, which is Rabindranath Gabri, appears with his counsel, does the pleading and gets a date for the master hearing, for the merits hearing. In this case, the master hearing in February, I believe, 6, the counsel for Mr. Gabri tells the judge the language of choice is Punjabi. Judge Tway, who is the immigration judge, ignores that, continues to question Mr. Gabri in English and asks him, what's your religion? He says, I'm a Sikh. And if you look at the AR and there's a question mark, Sikh. You don't seem to be wearing a turban. That's the first time the IJ has seen Mr. Gabri. And probably not more than two minutes. How do you prove that you are a Sikh? Does it show on your passport? Does it show on your birth certificate? No, Your Honor, it doesn't. Indian passports issued by the government of India do not state the person's religion. What about birth certificates? They don't either. This petitioner, Mr. Gabri, did submit letters from the Sikh temple in India and from the Sikh temple in San Jose that he attends, which says there's a Sikh, he comes to the Gurdwara and there's evidence of that, and he's testified to it. And Judge Tway needs to know better than this, Your Honor. He's been a judge since 1995. He's listened to hundreds of Sikh asylum cases, and he knows there's many, many Sikhs who are clean-shaven. I have appeared before him in numerous cases. He knows I'm a clean-shaven Sikh. And there's many other Sikh attorneys. And I've represented many respondents before him. If we accept the fact that he is a Sikh, has he established his right to asylum? We'll just say he is a Sikh. Yes, Your Honor. Mr. Gabri's asylum is based on four grounds. One is that he and his family are victims of the 1984 Sikh riots, where thousands of Sikhs were killed by government-sponsored mobs. It's more of a massacre than riots, but the government of India chooses to call it riots. And the judge expects him to produce a death certificate for his father, who was burned alive by a mob of God knows how many people. The government of India doesn't even acknowledge that most of these people are dead. There's no official count how many people died. And he expects him to produce a death certificate. And the people who committed these crimes have never been brought to justice. And there's numerous news articles, there's groups, discussions in the parliament, but nobody till date has been brought to justice. How is he going to get a death certificate? Well, let's assume that his father was killed, and killed because he was a Sikh and in these riots. So let's move on to his proof that he would be persecuted. Then he is arrested twice, Your Honor, December 2000 and November 2001. December 2000, he is protesting because the Hindu majority has burned a mosque of the Muslims. So he is demonstrating against the tyranny of the majority against the minority community, having himself faced that similar tyranny a few years ago. He's arrested because of that. And he's beaten and he's testified he's beaten and tortured. And what the IJ finds, IJ says, well, how can somebody who's not a member of any political organization participate or organize such a meeting? That's pure speculation. You don't have to be a member of a political party to demonstrate against the government. Let me focus attention on what I think are the hard parts. I mean, there are some questions, and I understand your concerns about what the IJ said, but I think there are things that your client is concerned about, too. And let's get down to the hard ones, specifically. The initial story from your client and I think the two affidavits that were submitted got the date wrong. Whether it was February and it should have been June or June and it should have been February. They said June. It should have been February. And then subsequently he claims to have fled out of fear of people that turned out to be in custody at the time he fled. How do you deal with those? One, Your Honor, it is nothing in the record shows that the petitioner made the change to June 2002. If you look at the asylum application that's on the form I-589, page number starts on 390, and it's a two-page declaration. Now, the second page says on top, in the start of 2002, Yadav's son Vikas and nephew Vishal killed. And somebody has crossed off the start and written June over there. The start of 2002 would be compatible with what he testified in February 2002. Nobody knows who made this change. The asylum officer who interviewed him made two changes, and they're on the first page, and they're marked 1 and 2, and he or she has initials next to those changes. If this change was made at the asylum office, it should have been either the applicant's initials or the interviewing officer's initials. The IJ makes a reference to it. He says probably, we don't know, maybe the asylum officer made those changes or the respondent, and then brushes it off and moves on. But, counsel, the problem for me is then there are two affidavits that use the June date. Yes, Your Honor. They do say that, that so-and-so was killed in June 2002. Now, those affidavits, they are not recipient witnesses. They don't say that they witnessed the murder. Even the Petitioner never says he witnessed the murder. And the Petitioner doesn't gain anything. He's not enhancing his claim by saying the murder took place in June instead of February. The murder took place, and then there's an incident in August. I'll get to that, Your Honor. I know that Your Honor had concerns with that. But the IJ should have probed this fact more as to how the June, who made the correction or who made the change. And the respondent doesn't appear to have testified anywhere that the murder took place in June, neither before the Asylum Office or in the IJ, because otherwise the trial attorney would have submitted a prior inconsistent statement saying so-and-so happened. I'll move on, Your Honor. The yellow light is up. And as regards the incident of August 2002, there's nothing in the record that shows that Vikas was actually in police custody. In fact, the background documents show he was in police custody only for one day in March. After that, he was in judicial lockup, which is a much lower standard of incarceration. And so we don't know whether he was in custody in August. And he also says, he never says he saw Vikas himself. He says, my mother told him that it was Vikas. Nothing in the record to show that mother is familiar with what Vikas looks like. One of his cronies could have said, I'm Vikas. And it's nighttime, the man is on the roof, and there's gunfire, and he ran away. These are things that IJ should have probed further. What this petitioner is trying to establish was that the facts around this murder were his cause for leaving the country and for his fear. And so I think that these dates, ordinarily they're not necessarily important, but here they tend to go to the heart of his claim. This is the last incident that happened. Not the only incident that happened in his lifetime. And these people are powerful. If you look at page 171, Vikas Yadav and his father, D.P. Yadav, who's a senator, a member of parliament akin to being a senator, he's admitted into the ruling party of India, even though he's a notorious criminal. The Supreme Court of India moved the trial out of the state. Didn't even trust the lower judiciary or the state high court. That's how powerful these people were. What is to say that Vikas could come in and out of judicial lockup whenever he wanted to? If a man is so powerful that the prime minister would welcome him into his party, even though he's a confessed criminal, what is a local law police official going to deal with? This man could walk in and out of judicial lockup any time he wants to. Police corruption is notorious. State Department reports say that. So this case needs to go back to the I.J., Your Honor. And I.J. needs to give him an unbiased hearing and look at all these aspects and allow him an opportunity to address it. Let's proceed. Thank you for the argument. We'll hear from the Attorney General. Good morning again, Your Honors. My name once again is Bo Stanton. I'm here today on behalf of the Attorney General. There is but one issue in this case for this Court to decide, and that is whether or not substantial evidence supports the agency's determination that the petitioner did not establish his eligibility for asylum, withholding or removal, protection under the Convention against Torture. The immigration judge gave multiple reasons for doubting the petitioner's credibility and therefore denied him asylum and withholding or removal and protection under the Convention against Torture on this basis. The Board upheld that determination and identified two specific reasons for supporting that determination. Both have been identified by this Court. First, the petitioner testified and also had on his declaration that the murder had occurred in June of 2002, but then receded from that, said February of 2002, and yet there are two affidavits from his friends who said the murder also happened in June of 2002. These are – this is a major inconsistency that goes to the heart of the asylum claim, because at the time the murder occurred, it demonstrates whether or not he actually has a will found in the fear of future persecution because he – whether or not he witnessed this murder. The concern here is whether the IJ's belief that this was not a Sikh so colored her opinion that she couldn't go forward in a, how do we say, neutral way. Well, Your Honor, speculating on whether or not the immigration judge was so biased in terms of reining her opinion, this error was harmless because she also identified other reasons for doubting the petitioner's credibility. Even assuming that this still colored these determinations, the Board of Immigration Appeals identified two other issues that the immigration judge had identified in supporting that determination. So any possible bias that might have been exuded by the immigration judge was wiped away when the Board of Immigration Appeals heard, reviewed the decision, and then still upheld the decision for reasons other than because the petitioner did not really prove that he was a Sikh. So there are still two other independent reasons that suffice to sustain the adverse credibility determination. And under this Court's precedent, you only need to have one specific cogent reason that goes to the heart of asylum claim and that is supported by substantial evidence to uphold the agency's decision. Roberts. Well, I think Judge Fletcher's question is a partial answer, but she's raising something else as well, which is the question of whether the IJ came into this and had developed such skepticism toward Petitioner's case because of her disbelief that he was a Sikh because he didn't look like other Sikhs that she's used to, influenced her unduly with regard to the kind of the entirety. If you have a biased decision-maker, findings of fact that otherwise might be sustained could be called into question. Why isn't that a problem here? There is no evidence on the record, nor does Petitioner identify any in the opening and brief, that suggests that the immigration judge's potential bias at all influenced the other determinations underlying her adverse credibility determination. And without evidence of any potential bias reflecting on the other determinations, this Court's not going to assign nefarious motives to the immigration judge. But the bias is right there on the face of the record. I don't necessarily – I don't necessarily believe the immigration judge was biased in this case but was skeptical of whether or not this person was actually a Sikh and then identified potential reasons for why she was skeptical. Then in addition to that, she identified real inconsistencies between the Petitioner's testimony and documentary evidence for also finding him incredible. So without evidence that these – that this potential bias influenced her other determinations, this Court can't speculate that she did in fact allow this bias to influence the other determinations, and those determinations are supported by the record. What kind of evidence would there be of a person's unspoken bias? We know that she thinks he's not a Sikh. Correct, Your Honor. So then what? Well, outside of the fact that she doesn't believe he's a Sikh, there's no other evidence, and I would say this isn't even evidence that she is biased against Petitioner. She was just merely skeptical that he was a Sikh. There is no bias. I mean, there are other decisions which this Court has addressed where immigration judges have exuded bias and have been very outspoken about it on the record. So regardless of whether or not you want to speculate that internally that she was biased against the opinion, this Court can't do that because it must decide the petition for review on the administrative record. And on the record as it stands, there's no evidence of bias. And so even if – so even assuming that reason was faulty to rely on adverse credibility – to base adverse credibility determination on, there are still other reasons that are valid and supported by the record. And the first one being that there's inconsistency of dates regarding whether or not or when Petitioner witnessed his friend talking to his friend and then got murdered a couple days later. In addition to that inconsistency, there's also the fact that he said that during the time that the newspapers account that the person who murdered his friend was in jail at the time. Yet he claims that this person came from the rooftops with guns, with policemen, and then decided to try to kill him. Yet he didn't see this person. He said it was his mother. There is simply no evidence of record to suggest or to reconcile this inconsistency. And the Petitioner's counsel brings up the fact that this person, this person's father, is very high-ranking up in the government, so much so that he's buddies with the prime minister, that it's possible that his son was able to freely go and come and please as he was in jail. However, there's no evidence of record to support this. In addition, there's actually a newspaper article that states that the murderer's father was actually dismissed from the political party because of his corrupt activities. And so there is simply no evidence. The evidence of record actually supports the contrary to what Petitioner's counsel is suggesting. So at the end of the day, when you're reviewing this decision, there are two independent reasons for supporting the adverse credibility determination. Both are tethered to the record, and both go to the heart of the asylum claim. Therefore, this Court should uphold the agency's determination. And if there are no further questions, I will cede the rest of my time. Apparently not. Thank you. Thank you. Mr. Rai, is there anything? I think you've used your time, but we'll give you a minute if there's something important you think needs to be said. Your Honor, there's nothing in the record that shows that Vikas Yadav was in custody in August 2002. The government did not submit any documents to show that. The documents show he's denied bail, but that they are subsequent, that six months later, eight months later, after the trial, was moved to another state. And secondly, IG's bias. The IG tells the Petitioner, my interpreter looks more of a Sikh than you. Then he tells him, if you cannot understand my interpreter, means you are not a Sikh. How more biased can he be? This case needs to go back, Your Honor. Thank you. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Anello, Fletcher B. , Clifton